NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARGGURY GONZALES,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 2:16-cv-07416-SDW<br><br>**OPINION**<br><br>August 1, 2017 |

**WIGENTON**, District Judge

      Before this Court is Plaintiff Marggury Gonzales' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Dina R. Loewy's ("ALJ Loewy") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("The Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Loewy's findings dated November 5, 2014 are not supported by substantial evidence. Therefore, the Commissioner's decision is **REMANDED**.

## I. Procedural and Factual History

### A. Procedural History

Plaintiff filed for DIB on June 17, 2010, alleging disability as of March 13, 2010. (R. 279.) That application was denied both initially and upon reconsideration. (R. 101-02.) Plaintiff requested a hearing, which was held on September 17, 2012 before Administrative Law Judge Dennis O'Leary ("ALJ O'Leary"). (R. 86-100.) Plaintiff appeared and testified. (*Id.*) On October 12, 2012, ALJ O'Leary issued an unfavorable decision, finding that Plaintiff was not disabled and denying her application for DIB. (R. 103-17.) On November 6, 2013, the Appeals Council vacated the hearing decision and remanded the case for further consideration and evaluation. (R. 118-22.)

On January 8, 2014, ALJ Loewy held a hearing where both Plaintiff and vocational expert Melissa Fass Karlin ("VE Karlin") testified. (R. 49-85.) ALJ Loewy issued a second unfavorable decision on November 5, 2014, finding that Plaintiff was not disabled because she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 40.) On August 19, 2016, the Appeals Council denied Plaintiff's request for review. (R. 1.) Plaintiff now requests that this Court reverse the ALJ's decision and grant Plaintiff an award of benefits. (Pl.'s Br. at 50.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was thirty-seven years old at the alleged onset date of her disability. (R. 279.) She completed her high school education in Peru and worked previously for a mail terminal service, the United States Postal Service, and a cleaning service. (R. 59-64.) Her last significant employment was with a military postal service from March 2007 through March 2010. (R. 335.)

In that role, she was responsible for packing and shipping boxes, but her back problems forced her to stop working. (R. 65.) A work report indicates that her job required Plaintiff to stand for more than seven hours each day and lift boxes weighing up to one hundred pounds. (R. 335.) Plaintiff's role with the United States Postal Service also required her to lift heavy boxes. (R. 410.) She frequently lifted boxes weighing fifty pounds and was required to stand or walk for approximately eight to ten hours each day. (R. 336.)

### 2. Medical History

The record shows that several healthcare professionals saw Plaintiff in relation to her disability claims. (*see* R. 381-743.) Plaintiff also testified about her condition and completed a function report. (R. 56-74, 343.) Disability Report Form SSA-3368 alleges annular disc bulging, arthritis, a five millimeter gallbladder polyp, kidney hydronephrosis, anxiety, and depression. (R. 324.) The following is a summary of the medical evidence:

In March 2010, Plaintiff saw Dr. Paul Fontanazza ("Dr. Fontanazza") of the Primary Care Medical Group in Harrison, NJ. (R. 460, 499.) She complained of dizziness, palpitations, abdominal pain, headaches, lower back pain, paresthesia in her lower extremities, and difficulty sleeping comfortably. (*Id.*) Dr. Fontanazza opined that the dizziness, headaches, and palpitations could be stress-related and referred Plaintiff to both a pain management specialist and a psychiatrist. (R. 479.) He authorized two weeks leave from work and ordered an abdominal ultrasound, which revealed the five-millimeter gallbladder polyp. (R. 443, 446.)

Plaintiff was treated by several pain management physicians at Jersey Rehab in Belleville, NJ from March 2010 through January 2012. (R. 506-63.) In April of 2010, Dr. Edwin Gangemi ("Dr. Gangemi") ordered an MRI of the lumbar spine, which revealed annular disc bulging at the L4-5 level as well as annular disc bulging with slight indentation of the thecal

3

sat at the L5-S1 level. (R. 482, 522, 656.) Dr. Gangemi also ordered electrodiagnostic testing, which was normal and unremarkable. (R. 436.) He noted right L5 S1 irritation and opined, "Although not meeting strict criteria for lumbosacral radiculopathy, findings are likely consistent with this patient's symptomatology."[1] (*Id.*)

Dr. Damian Martino ("Dr. Martino"), also with Jersey Rehab, saw Plaintiff at least monthly during 2010 and at least bi-monthly from January 2011 through January 2012. (R. 506-63.) During each visit, Plaintiff complained of lower back pain, and each time Dr. Martino assessed that Plaintiff had "sprains and strains of the sacroiliac ligament" and lumbar radiculopathy. (*see* R. 506-63.) In May 2010, Plaintiff received an epidural injection and subsequently presented with less numbness and radicular pain. (R. 614, 616.) A second epidural injection was performed in June 2010. (R. 514, 523, 610, 616.) Following that injection, Plaintiff experienced greater pain on her right side but noticed overall less numbness and radicular pain as compared to her first visit. (R. 572, 620.) Dr. Martino prescribed Neurontin and ordered a third epidural injection, which was performed in August 2010. (R. 572, 605, 620.)

Plaintiff still reported pain in her bilateral sacroiliac joint following the third epidural injection and complained of back pain that was burning, constant, and sharp. (R. 623.) Plaintiff received no further injections and continued with her physical therapy until March 2011, when Dr. Martino prescribed self-directed home exercise. (R. 626-47.)

Beginning in May 2011, Dr. Martino ordered Plaintiff to wear a lumbosacral brace for back support, however, she had trouble receiving insurance approval for the device. (R. 692, 677.) Starting in July 2011, Dr. Martino's reports also included an assessment of bilateral ulnar tunnel syndrome. (R. 689.) He requested several more tests over the following months,

---

[1] Dr. Gangemi made a similar comment following a May 2011 electrodiagnostic test for cervical radiculopathy. (R. 760.)

including: a test of Plaintiff's L5-S1 under mild sedation; an MRI of the cervical spine; an MRI of the lumbar spine; and electrodiagnostic testing. (R. 663, 664, 669, 680.)

A December 2011 MRI of the cervical spine revealed no disc herniation but did show an abnormal bone marrow signal of the C6 vertebra. (R. 665.) Dr. Andrew Kaufman ("Dr. Kaufman") of University Hospital noted that this was likely a hemangioma. (*Id.*) In February 2012, an MRI of the lumbar spine showed a "slight disc bulge and bilateral facet hypertrophy at L5-S1." (R. 663.)

Plaintiff sought treatment at University Hospital after Dr. Martino stopped accepting her insurance. (R. 666.) She saw University Hospital orthopedist Dr. I. Ahmad ("Dr. Ahmad") in December 2012, who diagnosed her with a spinal disease. (R. 710, 719, 725, 731.)

In November 2014, Plaintiff underwent an MRI of the cervical spine upon the order of Dr. Shailendra Hajela ("Dr. Hajela") of Jersey Rehab. (R. 741.) On January 13, 2015, Dr. Hajela submitted a letter which stated that Plaintiff "has a lumbar disc disorder at L4-L5 & L5-S1 with disc bulge at both levels" and "spinal stenosis at all levels." (R. 743.) Dr. Hajela also indicated that Plaintiff's "[c]ondition has worsened in the past and is constant. Patient is unable to sit or stand for prolonged amounts of time. Patient is on a series of medications Lyrica, Tramadol, Flexeril, and Neurontin, these medications made the patient unable to perform any work duties." (*Id.*)

### 3. Mental Health Treatment

Plaintiff sought psychological counseling from Dr. M. Bradshaw ("Dr. Bradshaw") at Urban Medical Behavioral Services in Jersey City, NJ beginning in March 2010. (R.565.) Dr. Bradshaw diagnosed Plaintiff with major depressive disorder single episode. (*Id.*) During their first meeting, Dr. Bradshaw observed that Plaintiff demonstrated impaired cognitive functioning,

was fearful and anxious, showed manifest depression, and had issues with short term recall. (R. 567-68.)

### 4. State Agency Assessments

Plaintiff also saw several medical professionals from the Department of Disability Services ("DDS") in relation to her application for DIB. DDS consultant Dr. Nancy Simpkins ("Dr. Simpkins") completed a Residual Functional Capacity Assessment ("RFC") on August 17, 2010. (R. 576.) Dr. Simpkins diagnosed Plaintiff with degenerative disc disease of the lumbar spine and assessed that Plaintiff could frequently lift ten pounds and was occasionally limited in climbing, balancing, stooping, kneeling, crouching, and crawling. (R. 576-78.) Dr. Simpkins considered Plaintiff credible and reported that there were no medical source statements regarding Plaintiff's physical capabilities on file. (R. 581.)

A DDS Case Analysis Report completed in July 2011 by Dr. Ibrahim Hoursi ("Dr. Hoursi") affirmed Dr. Simpkins' rating. (R. 657.) A brief Case Analysis Report completed by Dr. Leslie Williams ("Dr. Williams") later that month affirmed the previous decisions of denial and completed the medical portion of the disability determination. (R. 658.)

DDS physician Dr. S. Bortner ("Dr. Bortner") conducted a psychiatric evaluation on October 18, 2010, covering the period from March 2010 through the date of review. (R. 584.) Dr. Bortner's review included no notes, but indicated that he based his medical disposition on depressive syndrome and anxiety disorder. (R. 584-89.) He marked Plaintiff as moderately limited in activities of daily living and in maintaining concentration, persistence, or pace. (R. 594.) Dr. Bortner also completed a Mental RFC of Plaintiff on January 19, 2010. (R. 432.) He stated that Plaintiff appeared credible and could interact appropriately, but that she might have

cognitive difficulties with complex instructions, making work-related decisions, and interacting with others with adaptations to workplace change. (R. 434.)

### 5. Function Report

Plaintiff completed a function report on June 2, 2010. (R. 343.) Plaintiff stated that she cares for her children and pets but that her daughter helps her shower and walk the pets. (R. 343-44.) Plaintiff cooks daily, prepares her children for school, and occasionally goes out on the weekends. (*Id.*) She complained of difficulty sleeping due to discomfort and stated that since the alleged onset of her condition, she is unable to carry and move heavy objects, drive, walk, sit for a long period of time, and sweep. (R. 344.)

### 6. Hearing Testimony

At the January 9, 2014 hearing, Plaintiff testified that she stopped working in 2010 after being placed on disability under The Family and Medical Leave Act ("FMLA") following onset back pain and emotional issues. (R. 65.) She currently sees her primary care physician for medication because Jersey Rehab stopped accepting her Medicaid Insurance. (R. 68.) She testified that she receives no other treatment as she looks for a doctor who accepts her insurance. (R. 69.)

Plaintiff testified that her medications cause dizziness, exhaustion, and stomach burning. (R. 71.) She stated that she feels unable to work due to pain, stating, "I cannot stand up, I cannot sit down, my legs shake, it is not the same. I am not the same way I used to be." (*Id.*) Plaintiff testified that she can only sit for roughly thirty minutes and that she must use a cane when walking. (*Id.*) Plaintiff also identified depression as a daily problem. (R. 72.)

At that hearing, ALJ Loewy presented VE Karlin with several hypotheticals to gauge Plaintiff's work capabilities. (R. 74.) The ALJ's hypothetical claimant was thirty-seven years

7

old at the alleged onset date, has a high school degree, understands some English, and can do light work and simple, routine tasks. (R. 79-80.) The hypothetical claimant can occasionally climbing stairs or balance, but can never kneel, crouch, or crawl. (*Id.*) VE Karlin testified that such a claimant could not do any of Plaintiff's past work, but could perform some jobs, including an assembler of small products, a routing clerk, and a mail clerk. (R. 80.) The same hypothetical claimant, VE Karlin testified, could not do any of those three jobs were the claimant limited to four hours of walking or standing per day. (*Id.*)

VE Karlin stated that if the hypothetical claimant were sedentary, such a person could work as a bench hand, a surveillance system monitor, and an addresser. (R. 81.) The claimant could not find work, however, if she were off-task more than fifteen percent of the workday. (*Id.*) Plaintiff's attorney declined to ask VE Karlin any questions. (R. 82.)

## II. Legal Standard

### A. Standard of Review

This Court has plenary review of all legal issues on appeal of a decision by the Commissioner of Social Security. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). It is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails

to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa Apr. 15, 2009) (quoting *Consolo v. Fed Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v/ Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give substantial weight and deference to an ALJ's findings if supported by substantial evidence. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargengrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have "been established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "involves doing significant and productive physical or mental duties…for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 494.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 41.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(v)(4). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

On appeal, Plaintiff seeks reversal of the Commissioner's decision on three bases. (Pl.'s Br. at ii-iii.) First, Plaintiff argues that ALJ Loewy misevaluated the medical record by "cherry picking favorable medical evidence." (*Id.* at ii.) Second, Plaintiff argues that the ALJ misevaluated Plaintiff's testimony. (*Id.* at iii.) And finally, Plaintiff argues that the ALJ provided VE Karlin with a factually and legally deficient hypothetical. (*Id.*)

After performing the five-step disability test, ALJ Loewy found that Plaintiff was not disabled within the meaning of The Act from March 13, 2010 through the November 5, 2014 decision. (R. 40.) At step five of the disability test, the ALJ relied on VE Karlin's testimony in determining that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 39.) The ALJ also placed "significant weight" on the records from the state agency consultants and stated that, while Plaintiff's impairments could be reasonably expected to cause the alleged symptoms, Plaintiff's statements were not credible. (R. 36-37.) Only "some weight" was given to the opinions of Dr. Martino and Dr. Fontanazza, Plaintiff's treating physicians. (R. 37.)

This Court is unable to determine whether substantial evidence exists to support the ALJ's findings, and thus will remand this action for further proceedings. ALJ Loewy's opinion does not explain why certain medical findings are credible and others are not. Further, it is unclear why Plaintiff's treating doctors are afforded only "some weight," while Plaintiff's non-treating doctors are afforded "significant weight." For example, the ALJ gives little weight to a report filed by Dr. Bradshaw on behalf of the Plaintiff but gives significant weight to the opinion of Dr. Bortner.[2] (R. 37-38.) ALJ Loewy states that Dr. Bortner "formed his opinion with the benefit of having reviewed the evidence in the file," but does not point to any specific evidence. (R. 37.) She also relied on a report from Dr. Bortner which included no "consultant's notes." (R. 596.) The ALJ then afforded little weight to Dr. Bradshaw's report because it did not include a medical opinion regarding Plaintiff's ability to do work-related activities. (R. 38.) However,

---

[2] This Court notes that ALJ Loewy relied on Exhibit 1F, an RFC Assessment completed by Dr. Bortner. on January 18, 2010. It is unclear why Plaintiff was evaluated for credibility prior to her alleged onset date.

13

that report did include a diagnosis, symptoms, comments on Plaintiff's mental and physical appearance, as well as an evaluation of Plaintiff's limitations. (R. 565-69.)

Further, ALJ Loewy opines that Plaintiff's statements are not credible, but does not provide any evidence or explanation to support this opinion. (R. 36.) Both Dr. Bortner and Dr. Simpkins, on whose opinions ALJ Loewy placed significant weight, reported that Plaintiff's allegations appear credible. (R. 434, 581.)

Finally, the hypotheticals presented to VE Karlin were not accurate representations of Plaintiff's limitations. For example, the ALJ found that Plaintiff had moderate difficulties relating to concentration, persistence, or pace but failed to incorporate them into her hypotheticals. (R. 34.) ALJ Loewy also made no reference to other restrictions or factors, such as production-speed limits.

Because of the foregoing, this Court is unable to determine whether substantial evidence exists to support the ALJ's findings.

### IV.     Conclusion

For the reasons stated above, the Commissioner's denial of Plaintiff's claim for DIB is **REMANDED** for further proceedings.


/s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:     Clerk
        Parties